UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CLIFTON BENJAMIN,

                 Plaintiff,

    -against-

TOWN OF ISLIP, TERI A. GIACALONE,
JOHN R. DICIOCCIO, and JOHN/JANE
DOES 1-5, currently unknown but subject
to discovery,

                 Defendants.
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**20 CV 56 (ENV)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff brings this action against the Town of Islip (the "Town"), the supervisor of the Town Animal Shelter (the "Shelter"), and the Town's attorney alleging defendants violated his rights under the Constitution and various state laws. Am. Compl., ECF No. 15. Plaintiff's claims stem from the neutering[1] and adoption of his two-year-old Belgian Malinois dog, Eto, after the animal was lost and placed in the Town Shelter. Id. ¶¶ 19-20, 44, 65. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. to Dismiss, ECF No. 24. The Honorable Eric N. Vitaliano referred this matter to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that plaintiff's federal law claims should be dismissed and that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

---

[1] The Court notes that the amended complaint states that Eto was "wrongfully spayed," and also states that Eto is a male dog. Compare am. compl. ¶ 29 (referring to Eto as "him") with am. compl. ¶ 65. However, "spay" refers to the sterilization of a female animal. See *Spay*, MERRIAM-WEBSTER DICTIONARY (11th ed. 2005) ("to remove the ovaries of (a female animal)").

## BACKGROUND[2]

Plaintiff Clifton Benjamin, an African American man and an experienced dog trainer, owned a two-year-old Belgian Malinois dog named Eto. Am. Compl. ¶¶ 10, 14-15. Plaintiff acquired Eto from the Netherlands for the purposes of "companionship, training, breeding, and propagating the Belgian Malinois bloodline." Id. ¶¶ 19-20. On September 18, 2018, plaintiff lost Eto, but the dog was found that same day and brought to the Town Shelter. Id. ¶¶ 23-24. Plaintiff went to the Shelter the next day to recover Eto and Shelter employees asked for proof of ownership. Id. ¶¶ 26-28. According to plaintiff, he provided proof of ownership, but Shelter employees refused to return Eto, stating that they needed additional proof of ownership. Id. ¶¶ 29-31. Plaintiff provided additional proof and on September 21, 2018, emailed Shelter employees, including defendant Giacalone, attempting to arrange Eto's retrieval. Id. ¶¶ 32-33. The Shelter never responded, and plaintiff again emailed the shelter on September 22, 2018 to attempt to recover Eto. Id. ¶¶ 34-35. The Shelter responded stating that the case was under review by the Town's attorney. Id. ¶ 36. Hearing nothing, plaintiff again emailed the Shelter on September 28, 2018 seeking information. Id. ¶¶ 37-38. Receiving no reply, plaintiff emailed the Shelter on October 1, 2018 and again on October 10, 2018, but received no response. Id. ¶¶ 39-42.

On October 14, 2018, plaintiff went to the shelter and learned that Eto had been adopted by a non-party at the direction of the Town's attorney, defendant DiCioccio. Id. ¶¶ 44-45. Plaintiff contacted the Town on October 23, 2018 and explained that he still had not received a response to his previous requests. Id. ¶ 46. Plaintiff alleges that his treatment by defendants evidences a discriminatory scam by the Town, its employees, and its attorney to deprive him of Eto and to

---

[2] All facts are taken from plaintiff's Amended Complaint, ECF No. 15, and are taken as true for the purposes of defendants' motion to dismiss. See Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

facilitate the dog's adoption by a white law enforcement officer. Id. ¶¶ 47-51. Specifically, plaintiff asserts that there was a "concerted scheme" involving defendant Giacalone acting at the direction of defendant DiCioccio, "to adopt out Eto, while knowing or on notice that Eto belonged to Plaintiff." Id. ¶¶ 48-49. According to plaintiff, defendants' actions deprived him of Eto's companionship and their wrongful neutering of Eto deprived him of potential future breeding revenues. Id. ¶¶ 54-56. He asserts that, in addition to depriving him of his property interest in Eto without due process, defendants discriminated against him because he is an African American man. Id. ¶¶ 52-53. Plaintiff believes he "was never considered a viable candidate to adopt Eto, who was adopted, upon information and belief, to a white law enforcement official…." Id. ¶ 53.

## PROCEDURAL HISTORY

Plaintiff commenced this action on January 3, 2020. ECF No. 1. Defendants requested a pre-motion conference in anticipation of filing a motion to dismiss. Defs.' Mar. 4, 2020 Letter, ECF No. 13. Plaintiff then filed an amended complaint and his opposition to defendants' request for a pre-motion conference. ECF No. 15-16. Defendants requested to move to dismiss the amended complaint and the Court set a briefing schedule. ECF No. 17; Electronic Order dated April 20, 2020. Defendants now move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support of their motion, defendants provide their counsel's declaration (Perillo Decl., ECF No. 24-1); a copy of the amended complaint (Am. Compl., ECF No. 24-2); a copy of the original complaint (Compl., ECF No. 24-3); a copy of the Town Code of the Town of Islip regarding the regulation of dogs (Town Code, ECF No. 24-4); and a Memorandum of Law (Def.'s Mem. of Law, ECF No. 24-5). Plaintiff filed a Memorandum

of Law in opposition (Pl.'s Mem. of Law, ECF No. 25) and defendants filed a reply (Reply, ECF No. 26).

## DISCUSSION

The amended complaint sets forth seven causes of action. Plaintiff labels the first five causes of action as follows: Civil Conspiracy; Violation of the Equal Protection Clause of the Fourteenth Amendment; Violation of the Due Process Protection Clause of the Fourteenth Amendment; Liability of the Town of Islip for Constitutional Violations; and Conversion. Am. Compl. ¶¶ 24-115. The sixth cause of action is not clearly stated but demands defendants return Eto to plaintiff. Id. ¶¶ 116-18. The seventh cause of action invokes 42 U.S.C. § 1983 and reiterates plaintiff's due process and equal protection claims. Id. ¶¶ 119-26.

Defendants argue that the amended complaint should be dismissed for lack of subject matter jurisdiction because plaintiff lacks standing and his claims are unripe. Defs.' Mem. of Law. 13. Defendants further allege that plaintiff's complaint fails to state a claim and that the individual defendants are immune from suit. Id. at 20-24.

## I. Justiciability and Federal Rule of Civil Procedure 12(b)(1)

Federal courts have only limited jurisdiction and, as Constitutionally prescribed, may only adjudicate "actual cases or controversies." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). The requirements of standing and ripeness are intended to ensure that the federal courts do not exceed their Constitutional grant of authority. See id. (citing Raines, 521 U.S. at 820); United States v. Vale, 566 Fed. Appx. 56, 57 (2d Cir. 2014) (summary order) (discussing ripeness in the context of the Constitution's "cases and controversies" requirement). Federal Rule of Civil Procedure 12(b)(1), which governs

challenges to the Court's subject matter jurisdiction, is the proper vehicle for challenging standing and ripeness. See Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd., 742 Fed. Appx. 521, 523 (2d. Cir. 2018) (summary order) (citing Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 121 (2d. Cir. 2014) (conducting a ripeness inquiry pursuant to Rule 12(b)(1)); Carter v. HealthPort Tech., LLC, 822 F.3d 47, 54-55 (2d Cir. 2016) (citing Davis v. Fed. Election Comm'n, 554 U.S. 724, 732-33 (2008)) (explaining that a case where standing is lacking is dismissed for lack of subject matter jurisdiction). Before deciding any case, the Court must assure itself that subject matter jurisdiction is proper. Landau v. Eisenberg, 922 F.3d 495, 497 (2d Cir. 2019) (quoting United States v. Bond, 762 F.3d 255, 263 (2d Cir. 2014)).

## A. Standing

A plaintiff has standing to sue when he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." See Spokeo, 136 S.Ct. at 1547 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (2016)). At the pleading stage, the plaintiff must allege sufficient facts to demonstrate standing. Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

"To demonstrate injury in fact, a plaintiff must show the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016) (quoting Lujan, 504 U.S. at 560). An injury is "concrete" when it actually exists, "that is, it must be 'real and not abstract.'" Id. (internal citations omitted) (quoting Spokeo, 136 S.Ct. at 1548). The injury is "particularized" when it effects the plaintiff in a way that is unique from the effect on the public at large. Id. (citing Sierra Club v. Morton, 405 U.S. 727 (1972)).

An injury is considered "fairly traceable" to a defendant when a plaintiff "demonstrates a causal nexus between the defendant's conduct and the injury." Rothstein v. UBS AG, 708 F.3d 82, 91 (2d Cir. 2013) (internal quotation marks omitted) (quoting Heldman v. Sobol, 962 F.2d 148, 156 (2d Cir. 1992)). The showing required to demonstrate this nexus is less than what would be needed to show "proximate cause" in a personal injury case. Id. (citing Bennett v. Spear, 520 U.S. 154, 168-71 (1997)).

A plaintiff's injury is considered redressable when there exists "the 'non-speculative likelihood that the injury can be remedied by the requested relief.'" Coal. Of Watershed Towns v. U.S. E.P.A., 552 F.3d 216, 218 (2d Cir. 2008) (quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touch LLP, 549 F.3d 100, 106-07 (2d Cir. 2008)). For the purposes of standing, the recovery of money damages and an injunction may constitute adequate redress for an injury. Haley v. Teachers Ins. & Annuity Ass'n of Am., No. 17-CV-855(JPO), 2018 WL 1585673, at *3 n.3 (S.D.N.Y. Mar. 28, 2018) (citing Lujan, 504 U.S. at 590).

**B. Ripeness**

A case is ripe when it "present[s] 'a real, substantial controversy, not a mere hypothetical question.'" Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) (quoting AMSAT Cable Ltd. v. Cablevision of Conn., 6 F.3d 867, 872 (2d Cir. 1993)). A claim is not ripe when it depends on a future event that may never occur. Id. (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985)). A ripeness analysis may be either "Constitutional" or "prudential" in nature. New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 131 (2d. Cir. 2008) (Sotomayor, J.) (quoting Simmonds v. INS, 326 F.3d 351, 35-57 (2d Cir. 2003)). A case fails to be "Constitutionally" ripe unless it presents an actual dispute and fails to be "prudentially" ripe when, for a variety of reasons, it is better decided at a later time. Id. (quoting

Simmonds, 326 F.3d at 357). Ripeness is a jurisdictional requirement which is not necessarily

absent simply because a plaintiff failed to comply with a statutory requirement to exhaust all

administrative remedies before proceeding in federal court. Paese v. Hartford Life and Acc. Ins.

Co., 449 F.3d 435, 445 (2d Cir. 2006) (quoting Richardson v. Goord, 347 F.3d 431, 434 (2d Cir.

2003)).

**C. Analysis**

Defendants challenge plaintiff's standing principally based on plaintiff's alleged injury.

They contend that because plaintiff's interest in Eto is at best a "qualified interest," he is unable

to demonstrate that he has standing to proceed. Defs.' Mem. of Law 13 (quoting Nicchia v. New

York, 254 U.S. 228, 230 (1920)). They also assert that "[p]laintiff cannot allege to have been

deprived of a 'possessory' interest at all" because Eto was "a 'lost' dog." Id. at 14. Defendants

argue that these facts deprive plaintiff of standing to bring the instant suit. Id. at 13. The Court

disagrees.

The owner of property that is taken or otherwise withheld ordinarily suffers sufficient

injury to confer standing. United States v. Cambio Exacto, S.A., 166 F.3d 522, 527 (2d Cir.

1999) (discussing how ownership of property may provide evidence of standing but

distinguishing ownership and injury). Although it is qualified, pet owners have a property

interest in their animals. Grant v. Am. Soc'y for the Prevention of Cruelty to Animals, No. 16

Civ. 2765(ER), 2017 WL 1229737, at *4 (S.D.N.Y. 2017) (collecting cases). Courts recognize

that "the killing of a pet dog constitutes 'a severe intrusion given the emotional attachment

between a dog and an owner.'" Azurdia v. City of New York, No. 18-CV-4189(ARR)(PK), 2019

WL 1406647, at *7 (E.D.N.Y. Mar. 28, 2019) (citing Carroll v. County of Monroe, 712 F.3d

649, 651 (2d Cir. 2013)). Several Courts have held that the unreasonable killing of a pet violates the Fourth Amendment. See Carroll, 712 F.3d at 651 (collecting cases).

Although plaintiff's claim here involves the neutering and adoption of Eto - not the killing of the dog - the injury suffered is still cognizable. The crux of plaintiff's allegation is that defendants wrongfully withheld Eto, neutered him, and gave him to another person, thereby depriving plaintiff of Eto's companionship and the future benefits of his ownership. See Am. Compl. ¶¶ 19-20, 56, 67. Plaintiff's amended complaint alleges he owned Eto, Eto was "a loving companion," and plaintiff was "wrongfully deprived of the ability to breed Eto." Id. ¶¶ 19, 54-55. This injury is sufficient for the purposes of standing.

Defendants' reliance on Nicchia v. New York is misplaced. In Nicchia, the Supreme Court considered a due process challenge to a state law which required dog owners to purchase a license for their dog. 254 U.S. at 230. In upholding the statute, the Court noted that "property in dogs is of an imperfect or qualified nature" and therefore it could be subject to state regulation. Id. at 230-31 (citing Sentell v. N. O. & C. R. R. Co., 166 U.S. 698 (1897)). Although state regulation of property is permissible, this does not mean that the state may deprive a person of their possessory interest in the property without due process or just compensation. Regulation and deprivation are two very different things.

Similarly, defendants argue that Eto's status as "a 'lost' dog" means that plaintiff had no possessory interest in him. This argument is equally unavailing. Although defendants cite the Town Code which dictates that title to an unredeemed dog shall be forfeited after five days, plaintiff alleges that he tried to "redeem" Eto the day after he was placed in the town shelter, but was rebuffed by defendants and other Town employees. For the purposes of determining whether plaintiff has adequately asserted standing, the Court must take the allegations in the complaint as

true. <u>Warth</u>, 422 U.S. at 501 (citing <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22 (1969) ("For the purposes of ruling on a motion to dismiss for want of standing…the trial…court[] must accept as true all material allegations of the complaint….."). When plaintiff's allegations are afforded the appropriate truthful inference, the Court finds that he has adequately established his possessory interest in Eto. Defendants' arguments to the contrary do not deprive plaintiff of standing to sue.

Defendants' arguments that plaintiffs' claims are unripe also fail. Defendants assert that this matter is not ripe because plaintiff failed to avail himself of certain administrative remedies or an Article 78 proceeding under New York state law. Defs.' Mem. of Law 16. Defendants state "[p]laintiff's failure to pursue available administrative and State law remedies render his § 1983 claims, sounding in equal protection and due process, unripe as these meaningful post-deprivation remedies are sufficient for purposes of procedural due process." <u>Id.</u> However, "there is no exhaustion requirement under Section 1983." <u>O'Leary v. Town of Huntington</u>, No. 11-CV-3754(JFB)(GRB), 2012 WL 3842567, at *12 n.7 (E.D.N.Y. Sept. 5, 2012). As will be explored below, failure to exhaust administrative and state law remedies undermines plaintiff's Constitutional due process claim, but defendants incorrectly conflate exhaustion of administrative remedies with the jurisdictional requirement of ripeness for the purposes of the instant justiciability analysis.

Accordingly, the Court should deny defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) as plaintiff has pleaded sufficient facts to establish standing and ripeness.

**II. Failure to State a Claim**

**A. Federal Rule of Civil Procedure 12(b)(6)**

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Lynch v. City of New York, 952 F.3d 67, 74 (2d Cir. 2020) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is "plausible" when the complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). Determining whether a claim is "plausible on its face" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679). In conducting its analysis, the Court must take all factual allegations as true and draw all "reasonable inferences…in the light most favorable to plaintiff." Id. (quoting Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009)). However, the Court is not required to accept as true mere "conclusory allegations or legal conclusions." AK Tournament Play, Inc. v. Town of Wallkill, 444 Fed. Appx. 475, 476 (2d Cir. 2011) (summary order) (quoting Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d. Cir. 2011)).

**B. Application**

The Court divides plaintiff's claims into two categories: (1) claims arising under federal law and (2) claims arising under state law. The federal law category includes the following claims: Violation of the Equal Protection Clause of the Fourteenth Amendment; Violation of the Due Process Clause of the Fourteenth Amendment; Liability of the Town of Islip for Constitutional Violations; and plaintiff's claims under 42 U.S.C. § 1983. The Court notes that plaintiff's Section 1983 claim is duplicative of his Equal Protection and Due Process claims. See 42 U.S.C. § 1983 (providing the mechanism for a civil action when a state actor violates a

plaintiff's Constitutional rights); O'Leary v. Town of Huntington, No. 11-CV-3754(JFB)(GRB), 2012 WL3842567, at *8 (E.D.N.Y. Sept. 5, 2012) (citing Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)) (noting that Section 1983 does not create any substantive rights); Verdon v. Consolidated Rail Corp., 828 F. Supp. 1129, 1136 (S.D.N.Y. 1993) ("[P]laintiff's Fourteenth Amendment claim is at best duplicitous, since Congress enacted § 1983 to serve as the means by which claims like plaintiff's can be brought under the Due Process Clause of the Fourteenth Amendment in place of asserting the claim more generally under the Fourteenth Amendment." (emphasis in original)). The Court will not consider plaintiff's duplicative claims. Id. Plaintiff's state law claims include: Civil Conspiracy;[3] violation of Equal Protection under Article I, Section 11 of the New York State Constitution,[4] plaintiff's sixth cause of action demanding that defendants return Eto; and conversion. The Court first considers plaintiff's federal law claims.

"Under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of law." O'Leary, 2012 WL3842567, at *8 (citing 42 U.S.C. § 1983). The parties here do not dispute that defendants' actions were taken under color of state law.

### 1. Plaintiff's Equal Protection Claim

Plaintiff, an African American man, asserts that defendants wrongfully deprived him of Eto, misled him about the Shelter's redemption procedures, and ultimately facilitated Eto's

---

[3] Plaintiff labels this claim as a "Civil Conspiracy" and alleges that defendants were involved in a scheme to wrongfully deprive him of Eto. Am. Compl. ¶ 47. Plaintiff does not allege any conspiracy to violate his Constitutional rights. Accordingly, the Court construes this civil conspiracy claim as a state tort and not as a Section 1983 conspiracy claim which would require a showing of "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citing Carson v. Lewis, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999)).

[4] "New York courts apply the same analysis for Equal Protection challenges under the New York constitution as under the Federal Constitution." Am. Atheists, Inc. v. Port Auth. of NY and NJ, 936 F. Supp. 2d 321, 339 (S.D.N.Y. 2013) (citing Under 21 v. City of New York, 65 N.Y.2d 344, 360 n.6 (N.Y. 1985)).

adoption. Am. Compl. ¶¶ 72-73. He alleges that "as an African American man….[he] was never considered a viable candidate to adopt Eto, who was adopted…to a white law enforcement official." Id. ¶ 53. He further states that he "was intentionally thus treated differently and disparately from other persons who came into the shelter to claim their dogs, who were not subject to escalating" proof requirements and that there was no rational basis for the disparate and different treatment" exhibited by defendants toward him. Id. ¶¶ 74-75. Plaintiff visited the shelter on at least one occasion prior to Eto's adoption, id. ¶ 26, and so Shelter staff would have been aware of plaintiff's race. However, the complaint never specifically describes any in person interaction plaintiff had with the named defendants. Ultimately, although his amended complaint is never explicit, plaintiff suggests that he was treated differently than people of other races because he is African American. Thus, plaintiff claims he was deprived of equal protection under the Fourteenth Amendment. Id. ¶ 76.

Plaintiff's allegations, which the Court accepts as true, describe a serious wrong done to plaintiff as well as an abuse of government authority. Despite his compliance with all legal requirements, state actors wrongfully held, neutered, and gave away his dog. As if this was not odious enough, plaintiff alleges defendants' insidious actions were motivated by plaintiff's race. Plaintiff's alleged mistreatment by defendants, the deprivation of his dog because he is African American, is serious and disturbing. Regardless of whether plaintiff is entitled to legal redress, at the very least, the pleadings raise the question: how could this have happened?

Although troubled by plaintiff's allegations, the Court must determine whether plaintiff's allegations, as set forth on the face of the complaint, sufficiently state a Fourteenth Amendment Equal Protection claim. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016) (explaining that

in considering a motion to dismiss under Rule 12(b)(6), the Court generally cannot look beyond the complaint). To establish an Equal Protection claim, a plaintiff "must show that he was treated differently than other persons who were similarly situated and that such differential treatment was either without a rational basis (a "class of one" claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." Casciani v. Nesbitt, 392 Fed. Appx. 887, 888 (2d Cir. 2010) (summary order) (internal quotation marks omitted) (first citing Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004); and then citing Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995)); see also Brown v. City of Oneonta, New York, 221 F.3d 329, 337 (2d Cir. 2000).

In addition, a plaintiff may plead intentional discrimination in violation of the Constitution's guarantee of Equal Protection by pointing to "(1) a law that makes classifications specifically based on a protected class, including race, (2) a facially neutral law or policy that has been applied in a discriminatory manner, or (3) a facially neutral policy that has an adverse effect and was motivated by discriminatory animus." Glover v. City of New York, 15-CV-4899(MKB), 2018 WL 4906253, at *11 (E.D.N.Y. Oct. 9, 2018) (citing Pyke v. Cuomo, 258 F.3d 107, 110 (2d Cir. 2001)). When a plaintiff's claim is based on an allegation of racial discrimination "proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Islam v. Melisa, No. 18-CV-2535(KAM)(LB), 2020 WL 1452463, at * 12 (E.D.N.Y. Mar. 24, 2020). At the pleading stage, "the plaintiff must thus 'present facts sufficient to support an inference of intentional…discrimination." Id. (quoting Howard v. City of New York, 602 Fed. Appx. 545, 557 (2d Cir. 2015) (summary order)); see also Masjid Al-Tawheed, Inc. v. Town of Putney, 336 Fed. Appx. 60, 61-62 (2d. Cir. 2009) (summary order) (citing Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978) (stating that

"naked assertions" cannot support a racial discrimination claim). Conclusory allegations of racial discrimination, without additional proof, will be insufficient to defeat a motion to dismiss. Rivera-Powell v. N.Y.C. Bd. Of Elections, 470 F.3d 458, 470 (2d Cir. 2006) (Sotomayor, J.) (quoting Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)).

Even a cursory review of the amended complaint reveals that plaintiff is familiar with the language of an Equal Protection claim. This familiarity is reflected though the inclusion of certain words and phrases throughout his complaint. Such words and phrases include: "Plaintiff was intentionally thus treated differently and disparately from other persons;" "There was no rational basis for the disparate and different treatment of Plaintiff;" and "there can be no rational explanation." Am. Compl. ¶¶ 74-75. The complaint does not clearly articulate under which Equal Protection theory plaintiff seeks to assert a claim. Plaintiff's allegations, in conjunction with plaintiff's reference to his status as an African American and his belief that Eto was given for adoption by defendants to a white law enforcement officer, suggest plaintiff's intent to plead claims under both "selective enforcement" and "class-of-one" theories of Equal Protection. Thus, the Court considers plaintiff's claims under both theories.

The Court first examines whether plaintiff has adequately pled a "class-of-one" Equal Protection claim. As mentioned above, to state a "class-of-one" claim requires allegations that plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A "class-of-one" theory requires plaintiff to "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Panzella v. City of New York, 231 F. Supp. 3d. 1, 7 (S.D.N.Y. 2017) (quoting Ruston v. Town Bd. For Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010)). This theory has a strict standard and

"plaintiff must show that '(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" Gem Fin. Servs., Inc. v. City of New York, No. 13-CV-1686(MKB), 2015 WL 1475853, at *7 (E.D.N.Y. Mar. 31, 2015) (quoting Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012)).

Here, plaintiff fails to plead a class-of-one claim. The complaint makes no attempt to explain how plaintiff is "similarly situated" to a comparator. In fact, the phrase "similarly situated" is nowhere in the amended complaint. The closest plaintiff comes to describe any "comparators" is when he alleges he "was intentionally thus treated differently and disparately from other persons who came into the Shelter to claim their dogs, who were not subject to these escalating requirements of providing proof…." Am. Compl. ¶ 74. There is no allegation how these other persons who came into the shelter were similarly situated to plaintiff. See Contiguous Towing, Inc. v. State, 202 F. Supp. 3d 269, 276-77 (E.D.N.Y. 2016) ("[Plaintiffs] must provide detail showing that the comparators are similarly situated."). Therefore, any attempt by plaintiff to proceed under a "class-of-one" theory must fail. See MacPherson v. Town of Southhampton, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (finding that an Equal Protection claim under both a "class-of-one" theory and a selective enforcement theory failed because the complaint did not identify any comparators "at all").

The Court next considers plaintiff's claim under a selective enforcement theory. That theory requires plaintiff "to show that (1) 'compared with others similarly situated, [the plaintiff] was selectively treated, and (2) the selective treatment was motivated by an intention to

discriminate on the basis of impermissible considerations, such as race or religion….” Gem Fin. Servs., Inc., 2015 WL 1475853, at *7 (quoting Martine’s Serv. Ctr. Inc. v. Town of Wallkill, 554 Fed. Appx. 32, 34 (2d Cir. 2014) (summary order)). “To prevail on an equal protection claim of racial discrimination, a plaintiff must show that he was treated differently from other similarly situated individuals as a result of intentional or purposeful discrimination based on his race.” Wilson v. City of New York, No. 18-CV-7301(AMD)(LB), 2020 WL 7509200, at *5 (E.D.N.Y. Sept. 24, 2020) (quoting Tyus v. Newton, No. 13-CV-1486, 2015 WL 5306550, at *7 (D. Conn. Sept. 10, 2015)). The Second Circuit considered an Equal Protection selective enforcement theory claim in LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980), where it examined disparate treatment of a plaintiff when compared to those similarly situated and based upon an impermissible basis. Hu v. City of New York, 927 F.3d 81, 90-91 (2d Cir. 2019). Plaintiffs bringing a LeClair selective enforcement claim need only plead that they are “roughly equivalent” to comparators or that there is a “‘reasonably close resemblance’ between a plaintiff’s and comparator’s circumstances”. Id. at 90-91, 93. A LeClair claim “requires proof of…[an] impermissible motivation…[and a] plaintiff cannot merely rest on a demonstration of different treatment from persons similarly situated.” Id., at 91 (internal quotation marks omitted) (quoting Bizzaro v. Miranda, 394 F.2d 82, 87 (2d Cir. 2005)).

However, as stated above, plaintiff fails to describe any similarly situated comparators. Without detail about such comparators, just as with a “class-of-one” claim, plaintiff’s selective enforcement theory claim must fail.

Next, I consider the intentional discrimination theories of an Equal Protection claim as discussed by the Second Circuit in Pyke v. Cuomo, 258 F.3d 107 (2d Cir. 2001). Those theories include:

16

> (1) A law or policy that expressly classified persons on the basis of race; (2) a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner; or (3) a plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

Id. (quoting Brown, 221 F.3d at 337). Given plaintiff's facts, the only theory which could apply is the application of an otherwise facially neutral law or policy in an intentionally discriminatory manner. A plaintiff proceeding under this theory need not identify similarly situated comparators. Glover, 2018 WL 4906253, at *11 (citing White v. City of New York, 206 F. Supp. 920, 930-31 (S.D.N.Y. 2016)). However, plaintiff still "must demonstrate that the application of the law was motivated by discrimination." Gause v. Claude, No. 18-CV-5505(JS)(SIL), 2021 WL 2156795, at *5 (E.D.N.Y. May 27, 2021) (citing Pyke, 258 F.3d at 110). To survive a motion to dismiss, the allegations in a complaint asserting discrimination based on race must give rise to "an inference of racial animus" and not merely state facts consistent with discrimination. See Sanders v. Grenadier Realty, Inc., 367 Fed. Appx. 173, 175 (2d Cir. 2010) (summary order) (citing Iqbal, 556 U.S. at 664).

The Court is mindful of the difficulty inherent in requiring a plaintiff to establish defendants' discriminatory intent at such an early stage of the case. See Sutter v. Dibello, No. 18-CV-817(ADS)(AKT), 2019 WL 4195303, at *12 (E.D.N.Y. Aug. 12, 2019) ("[D]irect evidence of discrimination is rare….") Report and Recommendation adopted by 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019)). Courts recognize that "because 'discriminatory intent is rarely susceptible to direct proof,' plaintiffs are permitted to rely on circumstantial evidence 'as may be available.'" Rosario v. Town of Mount Kisco, 16-CV-8766(NSR), 2020 WL 764280, at *7 (S.D.N.Y. Feb. 14, 2020) (quoting Hayden v. Paterson, 594 F.3d 150, 163 (2d Cir. 2010)). At the pleading stage, plaintiff has not yet been afforded discovery to flesh out and support his claims. However, "[a] plaintiff's 'conclusory allegations of disparate treatment' and 'personal opinion

that such treatment was motivated by discriminatory intent' are insufficient to state a Section 1983 intentional discrimination claim." Gaddy v. Ports Am., No. 13 Civ. 3322(AT)(HBP), 2015 WL 3929693, at *7 (S.D.N.Y. June 15, 2015) (quoting Morales v. New York, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014)). Further, "a bare allegation of discriminatory animus is not enough to render an equal protection claim plausible." Kajoshaj v. N. Y. C. Dept. of Educ., 543 Fed. Appx. 11, 15-16 (2d. Cir. 2013) (summary order) (quoting Iqbal, 556 U.S. at 678).

The Court examines the complaint to determine if plaintiff states sufficient facts to render the claim plausible. In the context of employment-based discrimination cases, where the pleading standard is lower than in the present matter, Courts examine a variety of factors to determine whether the pleadings support an "inference of discriminatory intent." Sutter, 2019 WL 4195303, at *12 (quoting Tubo v. Orange Reg'l Med. Ctr., No. 13-CV-1495(NSR), 2015 WL 5945853, at *7 (S.D.N.Y. Oct. 13, 2015)). These factors include a defendant's criticism and comments about a protected group and expressions of "favoritism" directed toward people outside of a protected group. Id. (quoting Tubo, 2015 WL 5945853, at *7). However, even when the Court applies the lower standard appropriate in the employment discrimination context, plaintiff's allegation that defendants did not give him back his dog based on discrimination is insufficient. See id. ("[T]he Amended Complaint contains nothing to connect any action taken against Plaintiff to her race or sex beyond conclusory assertions that she was discriminated against because she is white and because she is a woman.").

An Equal Protection intentional discrimination claim will survive a motion to dismiss when the complaint contains facts evidencing that plaintiff was targeted because of his membership in a protected group. See e.g., Janfeshan v. U.S. Customs & Border Prot., No. 16-CV-6915(ARR)(LB), 2017 WL 3972461, at *9-10 (E.D.N.Y. Aug. 21, 2017). The plaintiff in

Janfeshan was a Muslim man, born in Afghanistan, and a lawful permanent U.S. resident. Id. at *1. Upon arriving at JFK airport from Cairo, Egypt, he was stopped by Customs and Border Patrol ("CBP") agents, escorted to a room for questioning, where defendants took and searched his cell phone. Id. at *1-2. Plaintiff sued CBP, asserting an intentional discrimination Equal Protection claim. Id. at *9. In finding that Janfeshan had adequately pleaded his claim, the Court noted that his complaint alleged that while he was interrogated, CBP agents asked him questions about his religion and the circumstances in which he had originally come to the United States. Id. According to the Court, these facts, "raise a reasonable inference that CBP's actions towards Janfeshan were motivated at least in part by his religion and national origin." Id. at *10.

In examining equal protection claims premised on intentional racial discrimination, Courts find that a claim is sufficiently stated when a plaintiff's complaint contains allegations that individuals of a different race were treated differently. See Hamad v. Nassau County Medical Center, 191 F. Supp. 2d 286, 300 (E.D.N.Y. 2000). In Hamad, the Court found that plaintiff, a doctor of Filipino descent, adequately pleaded an equal protection claim when he alleged that Caucasian doctors did not face the same disciplinary measures leveled against him. Id. Similarly, Courts have found intentional racial discrimination claims sufficient where the complaint alleges that plaintiff was subjected to government action on the basis of a racially discriminatory government policy. See John v. Lewis, No. 15-CV-5346(PKC), 2017 WL 1208428, at *16 (E.D.N.Y. Mar 31, 2017). In John, plaintiff alleged that he was arrested as a result of "the stop and frisk policy directed at young black men by what was official policy of the City of New York." Id.

Here, plaintiff fails to sufficiently allege that defendants' actions were motivated by racial animus. "[I]t is hornbook law that the mere fact that something bad happens to a member

of a particular racial group does not, without more, establish that it happened <u>because</u> the person is a member of that racial group." <u>Williams v. Calderoni</u>, No. 11 Civ. 3020(CM), 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012) (emphasis in original) (citing <u>Reyes v. Erickson</u>, 238 F. Supp. 2d 632, 638-39 (S.D.N.Y. 2003)). To survive a motion to dismiss, a plaintiff alleging an equal protection violation on the basis of race must allege "meaningful specifics" in the complaint and cannot rest on "bare allegations which do not present circumstances that 'give rise to an inference of unlawful discrimination.'" <u>Burgis v. New York City Dep't of Sanitation</u>, 798 F.3d 63, 69 (2d Cir. 2015) (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

Plaintiff states that as "an African American man….[he] was never considered a viable candidate to adopt Eto, who was adopted…to a white law enforcement official." Am. Compl. ¶ 53. This is plaintiff's opinion, not a fact. This allegation is also curious because plaintiff alleges he owned and tried to recover Eto, not that he tried to adopt Eto. <u>Id.</u> ¶¶ 14, 26. In any event, the amended complaint fails to state sufficient facts to support the inference that defendants' poor treatment of plaintiff was motivated by racial animus. <u>Martinez v. Belcourt</u>, No. 20-CV-286(SRU), 2020 WL 5118016, at *9 (D. Conn. Aug. 31, 2020) (citing <u>Buckner v. Shumlin</u>, No. 12-CV-90(JGM), 2013 WL 6571814, at *9-10 (D. Vt. Dec. 13, 2013)) (finding that a complaint contained insufficient facts to support an allegation that a police officer's actions were intentionally discriminatory or racially motivated). Plaintiff's conclusory allegations which are asserted as facts are insufficient. <u>Dane v. United Healthcare Ins. Co.</u>, 974 F.3d 183, 188 (2d Cir. 2020) (quoting <u>Nielsen v. Rabin</u>, 746 F.3d 58, 62 (2d Cir. 2014)). Plaintiff never alleges that the other people who he claims were treated differently were members of a different racial group. He fails to allege any circumstantial evidence which might give rise to an inference of

discrimination. Plaintiff's conclusory allegations are the only nexus between his race and defendants' actions.[5]

Accordingly, defendants' motion to dismiss plaintiff's Equal Protection claim should be granted.

## 2. Plaintiff's Fourteenth Amendment Due Process Violation Claim

Plaintiff contends that although he made multiple attempts to retrieve Eto, defendants deprived him of his property without due process, neutering and adopting Eto to a third party. Am. Compl. ¶¶ 92-96. Defendants argue that plaintiff did not have a recognizable property interest in Eto, who had been lost, and that an Article 78 proceeding under state law provides Constitutionally adequate process. Defs.' Mem. of Law 32-36. Plaintiff's opposition to the motion basically repeats paragraphs 84 through 96 of his amended complaint. Pl.'s Mem. of Law 18-19. He makes only a passing reference to an Article 78 proceeding, stating "[n]or is a state Article 78 proceeding the proper forum to pursue constitutional deprivations such as the ones pleaded in detail herein." Pl.'s Mem. of Law 20 (emphasis in original).

"To state a claim for deprivation of property without due process of law, a plaintiff must identify a property interest protected by the Due Process Clause." Harrington v. County of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010) (citing Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010)). Plaintiff must then demonstrate that he was deprived of that property right without due process of law. Woe v. Spitzer, 571 F. Supp. 2d 382, 387 (E.D.N.Y. 2008) (citing Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994)). "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."

---

[5] Defendants make much of plaintiff's addition of a discrimination claim for the first time in his amended complaint. The Court does not credit defendants' position.

Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) [hereinafter HANAC] (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984)). In the case of random, unauthorized acts, a due process violation does not occur "so long as the State provides a meaningful postdeprivation remedy." Id. (citing Hudson, 468 U.S. at 531). "As the Second Circuit has emphasized…'where…a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy.'" Ahmed v. Town of Oyster Bay, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (quoting Grillo v. N.Y.C. Transit Auth., 291 F. 3d 231, 234 (2d Cir. 2002)); see also Rivera-Powell, 470 F.3d at 467 (2d Cir. 2006) (citing Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001)); Attallah v. New York College of Osteopathic Medicine, 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015) (finding an Article 78 proceeding to be an adequate post-deprivation remedy). Even if an Article 78 proceeding would be untimely and therefore no longer available, the fact that it was previously available satisfies the requirements of due process. See O'Leary, 2012 WL3842567, at *12. However, the Second Circuit also instructs that the availability of a post-deprivation procedure does not necessarily satisfy due process when the deprivation occurs in accordance with established state procedures. HANAC, 101 F.3d at 880 (citing Hudson, 468 U.S. at 532).

In HANAC, a contractor filed a Section 1983 suit against New York City and former Mayor Giuliani after the Mayor ordered that any City contracts held by the contractor be terminated and that the contractor was effectively ineligible for any future City contracts. Id. at 879. The contractor, HANAC, alleged that the City violated the Fourteenth Amendment when it deprived HANAC of its property interest in the contracts without due process. Id. at 880. After distinguishing between due process claims based on "established state procedures" and those

based on "random, unauthorized acts," the Second Circuit stated that HANAC's claim was based on a random, arbitrary act. Id. at 881. The Court stated: "[HANAC] makes no claim that the due process violation was caused by an established state procedure, such as the City Charter or PPB Rules. To the contrary, HANAC argues that state officials acted in flagrant violation of the City Charter and PPB Rules." Id. For that reason, the Court found the availability of an Article 78 proceeding barred HANAC's due process claim. Id. at 881-82.

In the years since HANAC, the Circuit "has noted, '[t]he distinction between random and unauthorized conduct and established state procedures…is not clear-cut.'" Rios v. Town of Huntington Housing Auth., 853 F. Supp. 2d 330, 338 (E.D.N.Y. 2012) (alteration in original) (quoting Rivera-Powell, 470 F.3d at 465). In Rivera-Powell, the Circuit further recognized that:

> [T]he [Supreme] Court held that government actors' conduct cannot be considered random and unauthorized…if the state delegated to those actors 'the power and authority to effect the very deprivation complained of…[and] the concomitant duty to initiate the procedural safeguards set up by state law,' even if the act in question 'was not…sanctioned by state law.'

470 F.3d at 465 (quoting Zinermon v. Burch, 494 U.S. 113, 138 (1990)). In addition, the acts of high-ranking officials with final decision-making authority may not be considered "'random and unauthorized' conduct for the purposes of a procedural due process analysis." Id. (quoting Velez v. Levy, 401 F.3d 75, 91-92 & nn.14 & 15 (2d Cir. 2005)). Examples of such "high ranking" state officials with final decision-making authority include the Chancellor of the New York City Schools, see Velez, 401 F.3d at 92 ("Levy is precisely the sort of "high ranking" official identified by this line of cases."), and the Commissioner of the New York State Department of Health, see DiBlasio v. Novello, 344 F.3d 292, 303 (2d Cir. 2003) ("The Commissioner of the N.Y. D.O.H. is a high-level state official with final authority on many department matters.").

Several Courts faced with the difficulty of distinguishing due process deprivations caused by random, unauthorized conduct from those caused by established state procedures, have analyzed claims under both theories. See e.g., Pierre v. N.Y.C. Taxi & Limousine Comm'n., No. 17-CV-973(MKB), 2017 WL 1417257, at *4-5 (E.D.N.Y. Apr. 19, 2017); Rios, 853 F. Supp. 2d. at 339-44. For example, the Rios Court stated that whether the deprivation alleged was caused by the random and unauthorized actions of a state actor or by established state procedure was immaterial because, under the facts presented, analysis under either theory would lead to the same result. Rios, 853 F. Supp. 2d. at 339. There, the Court found that the availability of an Article 78 proceeding insured due process and that the established state procedures complied with the requirements of due process. Rios, 853 F. Supp. 2d. at 339-44. In Pierre, the Court interpreted plaintiff's complaint as pleading a "random deprivation of his rights" and found that the availability of an Article 78 proceeding protected his right to due process. Pierre, 2017 WL 1417257, at *4. However, in the alternative, the Pierre Court stated that the pre-deprivation procedures in place had previously been found to comport with due process. Id. at *5.

Courts also look to whether plaintiff alleges that the state procedures in place are themselves to blame for a deprivation of due process. See e.g., Ahmed, 7 F.Supp.3d at 254-55; Byrne v. Ceresia, No. 09 Civ. 6552(WHP), 2011 WL 5869594, at *4 (S.D.N.Y. Nov. 22, 2011) (quoting Terio v. Johann, No. 05 Civ. 5918 (RPP), 2006 WL 2819659, at * 7 (S.D.N.Y. Sept. 29, 2006)). In Ahmed, the Court noted that plaintiffs did not challenge the adequacy of due process provided in an Article 78 proceeding or the adequacy of the applicable provisions of the Town Code. 7 F.Supp.3d at 254-55. Similarly, the Byrne Court found it significant that "[p]laintiff does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourth Amendment." Byrne, 2011 WL 5869594, at *4 (quoting Terio, 2006

WL 2819659, at * 7). The <u>Byrne</u> Court characterized plaintiff's argument as asserting that defendants misapplied state law and acted in "'flagrant violation' of required procedures" which supported the Court's finding that the action was random and arbitrary. <u>Id.</u> (quoting <u>HANAC</u>, 101 F.3d at 880).

Ultimately, "[t]he underlying question is 'whether the state [was] in a position to provide for pre-deprivation process.'" <u>Polito v. City of New</u> York, No. 15-CV-2301(ERK)(RML), 2017 WL 6542457, at *2 (E.D.N.Y. 2017) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 534 (1984). For this reason, Courts may find complained of deprivations to be "random and unauthorized" unless a plaintiff is able to "'plausibly allege that the deprivation...was effected' through government policy." <u>Frith v. Hill</u>, No. 07 Civ. 5899(JSR), 2009 WL 3073716, at *17 (S.D.N.Y. Sept. 23, 2009). When a plaintiff alleges that the deprivation of a property interest resulted from an "insidious conspiracy" among government actors, "there is no reasonable way that the state can provide pre-deprivation process." <u>Polito</u>, 2017 WL 6542457, at *2.

Here, the Court understands plaintiff to allege that defendants' actions were arbitrary, random, and unauthorized and not that his deprivation of Eto was caused by established state procedure. It should be noted that plaintiff alleges the deprivation he complains of as the animal's eventual neutering and adoption, not the initial seizure of Eto on the street and placement in the town shelter. Am. Compl. ¶. 90. Plaintiff alleges that defendants' actions were part of a "civil conspiracy." <u>Id.</u> at 3. Far from acting pursuant to established state procedures, plaintiff claims that defendants engaged in a "ruse, scam, and a scheme...to wrongfully deprive/convert/steal and...to smuggle the dog out to a private adoption, for an undisclosed sum." <u>Id.</u> ¶ 47. Defendants allegedly furthered their scheme by lying to plaintiff and claiming that the matter was under consideration by the Town's attorney. <u>Id.</u> ¶ 50. Plaintiff asserts that this

was all subterfuge to facilitate Eto's illegal adoption. Id.  He also states that "there was no rational basis" for his treatment by defendants. Id. ¶ 75. All of these allegations allude to "random and arbitrary" action, not actions based on state procedures or policy. See Byrne, 2011 WL 5869594, at *4; Frith, 2009 WL 3073716, at *17. Plaintiff's assertion that the complained of conduct was all part of an illegal conspiracy to steal Eto makes an adequate pre-deprivation procedure difficult if not impossible to imagine. See Polito, 2017 WL 6542457, at *2.

Plaintiff fails to allege that any high-ranking official with final decision-making authority acted to deprive him of Eto.[6] Rather, plaintiff alleges that despite his compliance with procedure and provision of proof of ownership, defendants "wrongfully and unlawfully failed to turn over Eto." Am. Compl. ¶¶ 29-30. Although plaintiff alleges that the actions of defendant Giacalone, the shelter supervisor, and defendant DiCioccio, the Town's attorney, resulted in the loss of his property, the facts in the amended complaint do not support a finding that these individuals are the type of high-ranking officials with final decision-making authority contemplated by the Second Circuit. See Rivera-Powell 470 F.3d at 465. The Court therefore cannot conclude that their actions constitute "established state procedure" rather than "random and unauthorized" conduct.

Here, assuming that plaintiff's property interest in Eto is Constitutionally protected,[7] an Article 78 proceeding provides an adequate post-deprivation remedy. See O'Leary, 2012

---

[6] The amended complaint states the Town "had a de facto policies, practices, customs and usages …[which] bar[red] certain persons, including Plaintiff, from recovering their animals…." Am. Compl. ¶ 100. However, this conclusory allegation fails to support a finding that plaintiff's loss was due to an established state procedure. See Monroe v. Gerbing, No. 16-CV-2818, 2017 WL 6614625, at *13-14 (S.D.N.Y. Dec. 27, 2017) (collecting cases).

[7] Defendants repeatedly question plaintiff's property interest in Eto and suggest, that because the animal was unlicensed and lost, plaintiff cannot assert a due process violation claim. Defs.' Mem. of Law 33-34; Reply 10-11. They argue that, at best, plaintiff possessed a "qualified interest" in Eto which is "subject to regulation." Reply 11 (citing Grant v. Am. Soc., for the Prevention of Cruelty to Animals, 16 Civ. 2765(ER), 2017 WL 1229737, at *4 (S.D.N.Y. Mar. 31, 2017)). The Court does not credit defendants' argument. The facts alleged in the amended complaint, taken as true, unquestionably establish plaintiff's property interest in Eto. A qualified property interest is still a property interest, the deprivation of which is subject to due process.

WL3842567, at *12 (collecting cases). Under New York law, an Article 78 proceeding may be instituted against a public body or official to challenge whether certain actions were undertaken "in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion." N.Y. C.P.L.R. § 7803(3). Essentially, the proceeding "permits a plaintiff to challenge state administrative actions." Cloister East, Inc. v. New York State Liquor Auth., 483 F. Supp. 3d 221, 237 (S.D.N.Y. 2020). Despite his claim that it is not a proper forum for "Constitutional deprivations," plaintiff fails to demonstrate that Article 78 is not adequate process.[8] To the contrary, the Second Circuit recognizes that "Constitutional issues can be decided in an Article 78 proceeding" and that the proceeding is adequate even if plaintiff may not ultimately recover the same relief available in a Section 1983 case. HANAC, 101 F.3d at 881 (first citing Christ the King Reg. High Sch. V. Culvert, 815 F.2d 219, 224-25 (2d Cir. 1987); and then citing Hudson, 468 U.S. at 535).

As an Article 78 is an adequate post-deprivation procedure, defendants' motion to dismiss plaintiff's due process claim should be denied.

### 3. Liability of the Town of Islip

Plaintiff alleges that defendant Town of Islip "had de facto policies, practices, customs and usages which were a direct and proximate cause of" his asserted Constitutional injuries. Am. Compl. ¶ 99. These policies include "failing to properly train, screen, [and] supervise employees" regarding proper proof of dog ownership. Id. ¶ 100. Defendants argue that plaintiff's claim against the town is an "insufficient, bare allegation[]" which fails to state a claim upon which relief can be granted. Defs.' Mem. of Law. 36. The Court agrees.

---

[8] The Court notes that the failure to bring an Article 78 proceeding does not present an exhaustion issue because "there is no exhaustion requirement to bring a section 1983 claim." O'Leary, 2012 WL 3842567, at *12 n.7.

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978). A local government's policy includes "the decisions of a government's lawmakers, the acts of its policy making officials, and practices so persistent and widespread as to practically have the force of law." Id. (citing Monell, 436 U.S. at 691). The allegations must contain "'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." Santagata v. City of New York, No. 17-CV-3053(PKC)(CLP), 2017 WL 2963453, at *2 (E.D.N.Y. July 11, 2017). When a plaintiff alleges that a municipality's failure to train its employees caused a Constitutional violation, such a claim may only proceed if plaintiff demonstrates that the policy "amounts to deliberate indifference" toward protected Constitutional rights. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); see also Aguilera v County of Nassau, 425 F. Supp.2d 320, 323-24 (E.D.N.Y. 2006). A complaint alleging failure to train cannot be based on general allegations but must contain specific facts "tending to support the inference" that municipal employers were not trained and that the failure to train resulted in the complained of Constitutional violation. See Aguilera, 425 F. Supp.2d at 324 (collecting cases). "[R]epetitive references to negligent failure to train and supervise" employees will not suffice. Tylko v. N.Y.C. Health and Hosp. Corp., No. 07-CV-207(BMC)(JO), 2007 WL 9723262, at *1 (E.D.N.Y. July 3, 2007).

The amended complaint cannot withstand defendants' motion to dismiss. Plaintiff does little more than make general allegations about the Town's practices and procedures, stating "defendants had de facto policies, practices, customs and usages of failing to properly train,

screen, [and] supervise employees" and of "rejecting as viable adoption candidates…those who they perceived to be as (sic) unsuitable or undesirable…on the basis of their race or color." Am. Compl. ¶¶ 100, 102. The facts alleged are insufficient to support a municipal policy, practice, or custom. See Aguilera, 425 F. Supp.2d at 324 (dismissing a municipal liability § 1983 claim when the only facts alleged in the complaint related to an isolated incident).

Accordingly, defendants' motion to dismiss plaintiff's failure to train and supervise claim against the Town of Islip should be granted.


**III. The Court Should Decline to Hear Plaintiff's State Law Claims**

Having recommended dismissal of all of plaintiff's federal law claims, I recommend that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. When evaluating the exercise of supplemental jurisdiction, a Court "should consider and weigh 'the values of judicial economy, convenience, fairness, and comity.'" TPTCC NY, Inc. v. Radiation Therapy Servs., Inc., 453 Fed. Appx. 105, 107 (2d Cir. 2011) (summary order) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). When only state law claims remain, declining to exercise supplemental jurisdiction serves to support the judicial interest in comity. See Valencia ex rel Franco v. Lee, 316 F.3d 299, 305 (2d. Cir. 2003) (quoting Cohill, 484 U.S. at 350); O'Leary, 2012 WL3842567, at *15 (quoting Birch v. Pioneer Credit Recovery, Inc., No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007)). When a case is at an early stage and only state law claims remain, declining to exercise supplemental jurisdiction and dismissing the state law clams without prejudice is appropriate. See TPTCC NY, Inc., 453 Fed. Appx. at 107 (citing Cohill, 484 U.S. at 350); Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Kolari v. New York-

Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

If the Court adopts this Report, only plaintiff's state law claims will remain. I therefore recommend that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and those claims should be dismissed without prejudice.

**CONCLUSION**

Accordingly, it is respectfully recommended that defendants' motion to dismiss should be granted in part and denied in part. Defendants' motion to dismiss under Rule 12(b)(1) should be denied and defendants' motion to dismiss under Rule 12(b)(6) should be granted. Plaintiff's federal law claims should be dismissed for failure to state a claim. The Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiff's remaining state law claims, which should be dismissed without prejudice.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____
            /S/
LOIS BLOOM
United States Magistrate Judge

Dated: August 12, 2021
       Brooklyn, New York